**GUARANTY STATE BANK v. FRANKLIN FIRE INS. CO. et al.** (No. 7143.)

(Court of Civil Appeals of Texas. San Antonio. April 24, 1924. Rehearing Denied May 28, 1924.)

1. **Husband and wife** ⬥169(4) — **Insurance** ⬥582—**Wife's note and mortgage for automobile held valid as in interest of her separate estate; mortgagee held entitled to insurance.**

Where wife, having money of her own, and conducting as she pleased an apartment house, bought automobile in her own name, and gave notes and mortgage thereon to bank and took out insurance thereon, payable to bank, as its interest might appear, *held*, on theory of contract being in interest of her separate estate, that notes and mortgage were not void because not signed by husband, and bank was entitled to the insurance.

On Motion for Rehearing.

2. **Appeal and error** ⬥1175(1)—**Proper judgment rendered on reversal; every necessary fact being presented and passed on.**

Every fact necessary for determination of rights of parties having been presented and passed on. case will not be remanded for new trial on reversal, but proper judgment will be rendered.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by the Guaranty State Bank against the Franklin Fire Insurance Company and others. From adverse judgment, plaintiff appeals. Reversed and rendered.

Charles T. Rowland and Marvin H. Brown, both of Fort Worth, for appellant.

J. W Kearby and Kidd & Hutcheson, all of Fort Worth, for appellees.

COBBS, J. This suit was filed by appellant to recover a judgment with foreclosure, against appellees, on nine promissory notes, executed and delivered by Mrs. M. D. Brazile, a married woman, to appellant, aggregating $1,032, secured by her chattel mortgage lien upon a certain Buick automobile. The automobile was insured in the Franklin Fire Insurance Company for $1,500; loss, if any, payable to appellant. The automobile was thereafter stolen and recovered by the insurance company. By agreement of the parties the insurance of $750, was paid in court to abide the judgment of the court, and the insurance company discharged of any further liability.

M. D. Brazile and Mrs. M. D. Brazile, husband and wife, filed answers, alleging and pleading that the notes and mortgage were executed solely by Mrs. Brazile, a married woman, without her husband's joinder, and, not being for necessaries, were void. She sought to recover the insurance on the stolen automobile, together with $350, the salvage recovered on the sale from the stolen damaged automobile.

The case was tried with a jury on special issues, and judgment rendered for Mrs. M. D. Brazile, on their answers, for $750 insurance money, and $350, the salvage portion and judgment against the bank generally, and canceling the notes and mortgage.

Without following the numerous assignments and propositions in the order as presented, we shall briefly discuss the questions, raised in their more logical order, material to the disposition of this case.

Mrs. Brazile purchased the car in question from a Mr. Adams, and executed and delivered the notes in question to the bank, which were substituted for the Adams notes therein, with a chattel mortgage on the car as security for the notes, and took the car in her possession, with a bill of sale for it in her own name from Mr. Adams. She was living with her husband at the time, and has ever since, and there was nothing to prevent him from knowing the facts—"she kept the car, after it was delivered, at home and in the shop a good deal of the time, because she needed it all the time." She had money of her own at that time, and had an income from her apartment of about $300 per month, to do with as she pleased. The apartment house is likewise their residence, where they live, and she looks after the management of it and after the renting of rooms. She testified that she collects all the rents, spends all the money, and attends to the running of the place; does all the business and handles all the money. She said, "If I wanted an automobile I bought it. Have bought about three cars, and paid for them as I saw fit." There was nothing to keep her husband in ignorance of the facts concerning the car, as she "had the car there, and (I) was driving the car." She further testified:

"I went right straight and told Mr. Orgain (cashier of the bank) as soon as the car was stolen that it was stolen, and reported it to the insurance people As I said, in about ten days or twelve days they located the car. They phoned me that it was found about twelve miles out here in the country some place, and they wanted to know then what I wanted to do with it. I said I didn't want anything to do with it, as I was not concerned, that it was up to the insurance people. * * * Mr. Orgain wanted to know if I would take $300 for the car, and I told him that it was not my car, and I had never received it back from the insurance people, and I had nothing to do with the sale of the car, and he called me several times about it, and finally when he called me I told him that I had fully made up my mind that I had no car to dispose of, as the bank and the insurance people had an equity in it, and it seemed that I had the least to say, and I couldn't sell something that didn't belong to me, and if he disposed of the car that it would be on his own responsibility, and Mr.

Orgain advised me, he said, just as he would advise his mother, to take what I could get out of the car, as peace of mind was worth something, and I said, 'I will come down and see about paying you the back payments on the car, and accept this business from the insurance people, and have the car put back in repair.' Mr. Orgain told me not to do that. I told Mr. Orgain that I could not sell the car; that I had nothing to sell."

[1] It is unconceivable to believe that the husband was ignorant of the facts of this transaction. No loyal husband could or would close his eyes to such obvious facts, and it can only be explained, in the light of his wife's testimony, that he was allowing her to run the business as she pleased and collect all rents, without ever accounting to him for any business she did or automobile purchased and used by her. We think the facts show an acquiescence on his part, and that her separate estate may be charged with it—at least to the extent of this insurance.

Again, on another ground, she, herself, caused the insurance to be taken out on the property, and made it payable to the appellant as its interest may appear, and placed it beyond her control as a definite indemnity. This was an executed contract, definitely indemnifying and protecting the bank against theft, such as did take place, and she nor her husband, jointly nor severally, are competent, after the theft occurred, to annul it by any plea of her supposed coverture, and deprive the bank of the indemnity she gave it. In her conversation with the cashier of the bank she said:

"I told him that I had fully made up my mind that I had no car to dispose of, as the bank and the insurance people had an equity in it, and it seemed that I had the least to say, and I could not sell something that didn't belong to me."

Evidently conceding the right of the insurance company for reimbursement, after paying the bank, the insurance could not be paid to her, for she had otherwise disposed of it.

We think the facts show the contract one in the interest of Mrs. Brazile's separate estate, and, if need be was acquiesced in by her husband, and therefore protected under the provisions of the married woman's right of contract concerning her separate property. We do not put the liability of the husband upon the implied doctrine of the agency for his wife, though she seems to have been allowed much latitude by him in carrying on a business and buying automobiles when desired, without his aid or concurrence.

After the car had been stolen and stripped, it was turned over to the bank to sell and to apply the salvaged amount of $350 to the credit of the promissory notes. It was also agreed that the said $750 be accepted in full satisfaction of the insurance contract as to the bank.

The bank, by the express direction of appellee, took out insurance against theft of the automobile; the amount of which, by her direction, was made payable to the bank, as its interest might appear; consequently it had an insurable interest in that policy that cannot be defeated by claims of coverture. The amount recovered was not shown to be more than the bank's insurable interest. It took no written contract with the husband's signature affixed thereto to validate such a contract of indemnity. It became effective and binding to appellant the very moment of its execution and delivery to appellant by the indorsement thereupon. Without that policy she could not have gotten the money advanced on the notes.

For the reasons given, this judgment is reversed, and the cause remanded for a new trial.

## On Motion for Rehearing.

[2] After a careful reconsideration of this case, we are convinced that our original judgment should have been to reverse the judgment of the trial court and render the proper judgment. In fact, we were inclined to make that order. It does not seem that anything further could be accomplished by a new trial, as every fact necessary for the determination of the rights of the parties has been presented and passed on.

The motion for rehearing is granted, and the judgment of the trial court is reversed, and judgment is here rendered that appellant have and recover of appellees the sum of $750, together with all costs in this behalf expended.